Christopher C. Shayne, Respondent, *v.* The Evening Post Pub-lishing Company, Appellant.

Horace White and Others, Formerly Trustees of Defendant Cor-poration, Appellants.

*Abatement of an action for libel against a corporation ceasing to exist by statutory limitation.*

An action, commenced in March, 1899, to recover damages for the publication of an alleged libel in February, 1899, against a corporation organized in 1871, under chapter 40 of the Laws of 1848, as amended by chapter 262 of the Laws of 1857, abates upon the expiration of the life of the corporation by the limita-tion contained in its articles of incorporation, and cannot be revived against the trustees of the corporation in office at the time of such expiration.

Section 19 of chapter 40 of the Laws of 1848, providing, "nor shall the dissolu-
tion of any such company take away or impair any remedy given against any
such corporation, its stockholders or officers, or any liability which shall have
been previously incurred," was not, so far as such an action is concerned, pre-
served by the saving clause contained in the General Corporation Law (Laws
of 1890, chap. 563, as amd. by Laws of 1892, chap. 687), which repealed the
entire law of 1848.

Chapter 611 of the Laws of 1875 does not apply to such a corporation, nor does
section 5 of the Business Corporations Law (Laws of 1892, chap. 691, amending
Laws of 1890, chap. 567, § 6), which contains a provision similar to section 19
of chapter 40 of the Laws of 1848, where it appears that the corporation did
not take any proceedings to come within the terms of these acts.

O'BRIEN and HATCH, JJ., dissented.

APPEAL by the defendant, The Evening Post Publishing Com-
pany, and by Horace White and others, formerly trustees of said
defendant corporation, from an order of the Supreme Court, made
at the New York Special Term and entered in the office of the clerk
of the county of New York on the 3d day of October, 1900, reviv-
ing and continuing the action against the said former trustees of the
defendant.

*Lawrence Godkin,* for the appellant.

*John Proctor Clarke* [*Edward J. Gavegan* with him on the
brief], for the respondent.

McLAUGHLIN, J.:

This action was brought to recover damages alleged to have been
sustained by the publication of an article in a newspaper, the New
York *Evening Post,* published by the defendant. It was com-
menced on the 17th of March, 1899. It appeared upon the calen-
dar May 15, 1900, when the counsel of the defendant called the
attention of the court to the fact that the corporation had expired
on January 1, 1900, by limitation contained in its articles of incor-
poration. This fact seems to have been then conceded, and there-
after a motion was made to revive and continue the action against
the trustees of the defendant at the time of its expiration. The
motion was granted and the defendant and the trustees have appealed.

We think the order must be reversed. Upon the dissolution of
the corporation, the action abated and it could not thereafter be
revived. This must be so, unless there be some statute to the con-
trary. The general rule is that in an action to recover damages for

personal injuries pending at the time of the death or dissolution of a defendant, the action abates and cannot be revived. (*Matter of Yuengling Brewing Co.*, 24 App. Div. 223; *National Bank* v. *Colby*, 21 Wall. 615; *Wade* v. *Kalbfleisch*, 58 N. Y. 282; *More* v. *Bennett*, 65 Barb. 338.) We do not know of, and our attention has not been called to, a statute which takes the defendant out of the general rule.

The defendant was incorporated in 1871 under chapter 40 of the Laws of 1848, as amended by chapter 262 of the Laws of 1857. Section 19 of this chapter provides that "The Legislature may at any time alter, amend or repeal this act, or may annul or repeal any incorporation formed or created under this act; but such amendment or repeal shall not, nor shall the dissolution of any such company take away or impair any remedy given against any such corporation, its stockholders or officers, for any liability which shall have been previously incurred." The whole act, however, was repealed by the General Corporation Law (Laws of 1890, chap. 563, as amd. by Laws of 1892, chap. 687), the saving clause of which (§ 35) provides that "The repeal of a law or any part of it, specified in the annexed schedule, shall not affect or impair any act done, or right accruing, accrued or acquired, or liability, penalty, forfeiture or punishment incurred prior to May 1, 1891, under or by virtue of any law so repealed."

This action, as before indicated, was commenced in March, 1899, to recover damages for the publication of an article in February, 1899. The plaintiff's right to recover, as well as the defendant's liability to respond in damages, of course does not come within the saving clause, inasmuch as it did not accrue prior to May 1, 1891, nor does section 36 aid the defendant. That section provides, among other things, that the provisions of the General Corporation Law, so far as they are substantially the same as those of laws existing on April 30, 1891, shall be construed as a continuation of such laws, modified or amended according to the language employed, and not as new enactments. But there is no provision in the General Corporation Law similar to the provision in the act under which the defendant was incorporated (Act of 1848 and amendments), permitting the action to be revived and continued in case of dissolution. This seems to be conceded by plaintiff's counsel, because in the brief

filed by him he says that "this corporation formed under the Act of 1848 is to be treated, for the purposes of this motion, as if formed under the Business Corporation Law." Manifestly, this cannot be so. The Business Corporations Law (Laws of 1890, chap. 567, as amd. by Laws of 1892, chap. 691) does not apply either directly or inferentially to the defendant, The Evening Post Publishing Company. That act provides how a corporation may be formed, or how an existing corporation organized under other acts may acquire the benefit of it by reorganizing under it. But the defendant was not incorporated under this act, and never took any proceedings to come within its terms, and, therefore, it can no more be claimed that that act applies than it could that the Business Act (Laws of 1875, chap. ·611) applies. (*Matter of Yuengling Brewing Co., supra.*)

The case of *Marstaller* v. *Mills* (143 N. Y. 398) is not in point. The cause of action there was to recover damages for the loss of services of. the plaintiff's son, and the court held that the action did not abate. It there appeared that the corporation was organized under the provisions of the act of 1875, and came within the provisions of section 5, chapter 691, Laws of 1892, amending section 6, chapter 567, Laws of 1890, and for that reason, inasmuch as it involved a wrong done to the *property rights* of the plaintiff, it could, by express provision of that act, be revived and continued by the executor.

Here chapter 611 of the Laws of 1875 does not apply to the defendant, nor does the Business Corporations Law apply, and the only law which is applicable is, as already indicated, the General Corporation Law, and there is no provision in that law which permits an action against a defunct corporation to be revived and continued against the trustees, as permitted in the order appealed from.

It, therefore, follows that the order appealed from must be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs.

VAN BRUNT, P. J., and INGRAHAM, J., concurred.; O'BRIEN and HATCH, JJ., dissented.

HATCH, J. (dissenting) :

This is a civil action brought to recover damages for an alleged libel against the plaintiff. The defendant was incorporated under

chapter 40 of the Laws of 1848, as amended by chapter 262 of the Laws of 1857. The term of its corporate life under its charter expired on the 1st day of January, 1900, after the action was commenced and before the same was tried. It is now claimed that such cause of action has abated and that it did not survive the expiration of defendant's charter, and that there did not exist on such date any statutory provision which continued defendant's liability. This is the only point presented upon the appeal in this case.

The adjudications which have been had upon this subject as reported in the books do not seem to me to be in entire harmony, although, so far as this court is concerned, it is perhaps not an open question. *Hepworth* v. *Union Ferry Co.* (22 Civ. Proc. Rep. 407) seems to be an authority upon the subject. That was an action to recover damages for an assault and battery committed by an agent of the ferry company. While the action was pending the charter of the ferry company expired by its own limitation. The case came on for trial before Mr. Justice CULLEN, and the point was taken that the action had abated and did not survive the life of the charter. In disposing of the question, the learned justice said : "Nor do I think the rule of *actio personalis moritur cum persona* applies to this case. The defendant was simply an artificial being. The claim which the plaintiff had was in reality against the property and assets of that corporation ; it was from that that he was to obtain satisfaction. That property still remains and is in the hands of the defendant's trustees. It certainly would be inequitable to deprive the plaintiff of satisfaction of his claim, if he has one, when by the voluntary act of the real parties in interest, the stockholders, an end has been put to the corporation, for, under the statute, its corporate existence might have been continued had the stockholders seen fit to do so. I think, therefore, that it should be held that this cause of action survives, unless there be a controlling authority to the contrary, which I do not find." And the learned judge concluded that by virtue of sections 9 and 10, title 3, part 1 of chapter 18 of the Revised Statutes (1 R. S. 600), the cause of action was a liability within the meaning of such provisions, and that as the remedy for the enforcement of the liability could only be against the property, the cause of action did not abate but could be continued, and the property in the hands of the trustees made answerable for the recovery. It is evident that in this

respect there exists a distinction between such a cause of action against an individual and one against a corporation. In the first the action is *in personam,* and remedy for its enforcement may take the person; in the second, no person exists who can be reached, and the remedy is against the property solely. Upon appeal this case was affirmed (*Hepworth* v. *Union Ferry Co.,* 62 Hun, 257), the court holding that the tort stood upon the same basis as a contract, and that as the Revised Statutes provided that upon dissolution of a corporation the directors should be trustees for the creditors and stockholders, the action could be maintained and did not abate. The case was subsequently appealed to the Court of Appeals, where the appeal was dismissed (131 N. Y. 645).

In *Marstaller* v. *Mills* (143 N. Y. 398) the action was against the trustees of the creditors and stockholders of a domestic business corporation to recover damages for loss of services of plaintiff's son, who was injured by the negligence of the defendant. It was held in that case that such an action did not abate, as it was brought for the enforcement of a property right, and the plaintiff was, therefore, to be regarded as a creditor of the corporation. While this decision did not in this view in terms involve the question that a cause of action for tort in favor of an individual survives the dissolution of the corporation, or that such person stands in the relation of a creditor to it, we think, however, that there is a clear intimation in the opinion that such is the fact. Judge GRAY says: " If this had been the case of an individual wrongdoer his death would not have caused the abatement of the cause of action for the wrong done by him to the property rights or interests of the plaintiff. That case has been expressly provided for and the action would be maintainable against his executors or administrators. (2 R. S. 447, §§ 1, 2; and see *Cregin* v. *R. R. Co.,* 75 N. Y. 192.) We do not think a discrimination has been intended in favor of corporations. The language of the section admits of the criticism that it fails to express clearly the intention that a liability upon tort is to be considered and met by the trustees; but, reading together section 5 of the Business Corporations Law and section 30 of the General Corporation Law, the construction is permitted that all persons who have claims against the corporation, upon which it might be liable, should be regarded as actual or possible creditors." It would seem as if this

language expresses a clear intimation that in the statutes to which we shall hereafter call attention such liability is preserved and survives the dissolution of the corporation.

The cases to which we have called attention were examined and construed by this court in *Matter of Yuengling Brewing Co.* (24 App. Div. 223), and the conclusion was therein reached that a cause of action for personal injury did not survive the subsequent voluntary dissolution of the corporation and the appointment of a receiver, and that the court was without power to authorize a continuance of the action against the receiver of the corporation, as such an action was not brought within chapter 611 of the act of 1875, or within the Business Corporations Law (Laws of 1892, chap. 691). And the court therein expressly holds that in the absence of express statutory authority such an action does not survive against the defunct corporation. It assumes to distinguish the decision in *Hepworth* v. *Union Ferry Co.* (*supra*) upon the ground that, the defendant therein being organized under the terms of a special charter, the language of such charter was sufficiently broad to authorize the continuance of the action, and, therefore, it might be said that it was maintained by express provision of law. As I read the *Hepworth* case, however, I do not think such distinction sound. In that case, as we have already seen, liability was made to depend, not upon the provisions of the charter, but upon the provisions of the Revised Statutes, and in consideration of the fact that the only remedy for the enforcement of the judgment was against the property of the corporation. While the provision of the charter was adverted to in the prevailing opinion rendered at the General Term, yet it is evident that the decision would have been the same had the charter contained no such provision. The *Yuengling* case also lays hold of the expression of Judge GRAY in *Marstaller* v. *Mills* (*supra*), wherein he says : " If provision has not been made in the statute law of this State, whereby such a cause of action is preserved from abatement, the common-law rule would undoubtedly be in force and the plaintiff's remedy would be gone." This language needs no construction, but it is quite evident that in the mind of the learned judge who wrote there existed a very strong impression, if it did not amount to a positive conviction, that such an action was maintainable under the statutory provisions. It may be assumed, there-

fore, that in the absence of statutory authority such an action abates, and that such is the result of the decision to which we have called attention.

Section 19 of chapter 40 of the Laws of 1848, under which this defendant was organized, provides: "The legislature may at any time alter, amend or repeal this act, or may annul or repeal any incorporation formed or created under this act; but such amendment or repeal shall not, nor shall the dissolution of any such company, take away or impair any remedy given against any such corporation, its stockholders or officers, for any liability which shall have been ·previously incurred." And by section 26, "Every corporation created under this act shall possess the general powers and privileges and be subject to the liabilities and restrictions contained in title third of chapter eighteen of the first part of the Revised Statutes." By section 9 of the Revised Statutes, to which reference is made, it is provided that upon the dissolution of any corporation created or to be created, the directors or managers of the affairs of such corporation at the time of its dissolution shall be the trustees of the creditors and stockholders of such corporation, with full power to settle its affairs, pay debts and divide the surplus, if any remains. And by section 10 it is provided that such persons shall have authority to sue for and recover the debts and property of such corporation in the name of its trustees, and they are made jointly and severally responsible to the creditors and stockholders to the extent of the corporate property and effects coming into their hands.

It is, therefore, evident that the provisions of section 19 of the act of 1848 in express terms fasten liability upon the corporation, which did not abate at dissolution but remained intact, to be enforced against its property, whether such claim arise out of tort or otherwise; and if such person is to be deemed a creditor of the corporation, the provisions of the Revised Statutes would clearly apply, and the action could either be continued against the corporation. or its trustees; and in this view, the language used in the *Marstaller Case* (*supra*) has direct and pertinent application. For, as I read that case, such a claim would constitute the person a creditor of the defunct corporation. We start, therefore, with the proposition settled beyond peradventure that these statutes preserved any liability

that may have been created against this corporation for such a claim as the present; and unless such liability has been taken away by subsequent enactment, this action survives.

While the act of 1848 was thereafter amended by the Legislature, nothing affecting these provisions of the statute was adopted prior to the acts of 1890, relating under various titles to corporations, except as may possibly be inferred from the provisions of chapter 611 of the Laws of 1875. The act of 1875, as its title indicates, was an act to provide for the organization and regulation of certain business corporations. It contained in effect a scheme for the organization of limited liability business corporations, and differed radically from the provisions of any prior act. It did not, however, either by express provision or by necessary implication, repeal the act of 1848 or its amendments. On the contrary, its necessary construction is that it intended to leave unimpaired corporations theretofore existing by virtue of general or special laws; for, by section 32, permission was given to any existing corporation to avail itself of the terms and provisions of the act, and points out the steps necessary to be taken in order to bring such corporations within its terms. It was in no sense mandatory and it rested entirely in the voluntary choice of the corporation to avail itself of its provisions or not as it chose. It is clear, therefore, that the intent was to leave existing corporations as they were found when the act took effect, without change or disturbance in the law or charter under which they were organized. This act, therefore, in nowise modified the rights and liabilities of this corporation as provided by the act of 1848. By section 38 of the act of 1875 it is provided in terms that the dissolution of a corporation for any cause whatever shall not take away or impair any remedy given against it, its stockholders or officers, for any liabilities incurred prior to its dissolution. So far, therefore, as this act is concerned, no change is wrought in the status of this corporation, and such status continued to be and remain the same down to 1890, as no change was made in the law affecting the present question during that period.

In 1889 this State entered upon the policy of a revision of its laws relating, among others, to the organization, government and control of business corporations, other than banks, banking and trust companies, and municipal corporations. The Governor was authorized

in that year to appoint three persons commissioners to revise and consolidate the laws relating thereto, among others. The acts of these commissioners thus appointed to a considerable extent have found their way into legislative enactments. It is to be borne in mind, however, that these commissioners were not appointed to construct new schemes for corporate government, but were expected to revise and consolidate existing statutes covering the subjects mentioned in the act. This consideration has pertinent application to the present question, as it was evidently the intent of the Legislature that no change should be made respecting the rights and liabilities or the general character of these corporations, but that such laws should be revised by striking therefrom obsolete requirements and unnecessary provisions inapplicable to changed conditions, and it is safe to say that the character of the duties imposed upon the commissioners indicated an intent to retain all the rights and liabilities which were essential and necessary to the life and well-being of the corporation and for the protection of the rights of all persons having dealings with them. It would be strange, indeed, if there could be spelled out of legislative action in respect to these matters any intention to relieve corporations from liabilities incurred during their corporate life at the time of their dissolution. Such a proposition is so startling as to call for its instant rejection. In consideration, therefore, of the statutes which have been passed as the result of revision and consolidation, we are to bear in mind such intent, and, as we shall hereafter see, it rests not alone in mere general implication, but is found expressed in terms and variety of form throughout all the legislation which has been had upon the subject. This brings us to a consideration of the acts themselves, to find, if we may, whether the salutary provisions of law which fastened liability and which, at least, existed prior to their passage, have been wiped out and swept away.

In 1890 the commission reported to the Legislature, and it adopted chapter 563, which has become known as the General Corporation Law; also chapter 564, known as the Stock Corporation Law; and chapter 567, known as the Business Corporations Law. These acts all took effect May 1, 1891. By the terms of these acts, as appears from the language used and the schedule of repealed laws at the close of each, it was clearly regarded that the provisions of the act of 1848

prior thereto were in existence, at least so far as sections 19 and 26 of that act were concerned. The General Corporation Law, as appears in the schedule of laws repealed, embraced sections 4, 7, 9 and 26 of chapter 40 of the Laws of 1848, and sections 2, 4 and 27 of chapter 611 of the Laws of 1875; also all of part 1, chapter 18, title 3 of the Revised Statutes, except section 5. The Stock Corporation Law repealed, among numerous of its sections, section 19 of chapter 40 of the Laws of 1848, and numerous sections of chapter 611 of the Laws of 1875, and it also repealed section 5 of the Revised Statutes mentioned above. This repealed the whole of part 1, chapter 18, title 3 of the Revised Statates. The Business Corporations Law repealed sections 1 and 2 of chapter 40 of the Laws of 1848, and numerous sections of chapter 611 of the Laws of 1875. Section 25 of the General Corporation Law provides that the provisions of that chapter, so far as they are substantially the same as those of laws existing on April 30, 1891, shall be construed as a continuation of such laws, modified or amended according to the language employed in that chapter, and not as new enactments. And by sections 19 and 20 are re-enacted substantially the provisions of the Revised Statutes which are repealed, and by these provisions are continued the liability of the trustees to creditors and stockholders, and power is continued in them to settle the affairs of the corporation. In section 72 of the Stock Corporation Law is contained the same provision with respect to the construction of its language as is contained in section 25 of the General Corporation Law. This is the only provision of this act bearing upon the present subject, except that contained in the repealing schedule, and it relates alone to the rule of construction which is to obtain. By section 23 of the Business Corporations Law, such construction is made applicable to it; and by section 6, the liability of a corporation is continued in the following language : " The dissolution of any such corporation for any cause shall not take away or impair any remedy against it, its stockholders or officers for any liabilities incurred previous to its dissolution."

It is said, however, that as this defendant did not avail itself of the provisions of chapter 611 of the act of 1875, and as it did not reincorporate under the Business Corporations Law, such provision has no application in the determination of its present status respect-

ing this question.   We are somewhat at a loss to discover just what provisions of law, under the revisions which were had in the law of 1890, apply to corporations incorporated under the act of 1848 and its amendments, and which did not avail themselves of the act of 1875.   There is nothing in express language in the General Corporation Law, or in the Stock Corporation Law, or in the Business Corporations Law, which in terms says that such acts apply or do not apply to such corporations.   Which particular title applies is wholly and entirely a question of construction.   It may be said that it is quite probable that such corporations were intended to be embraced within the first two titles, as the provisions thereof embrace much of the prior acts applicable to such a corporation; but the same thing is equally true of the Business Corporations Law, and as the rule of construction in express terms regards each enactment as a re-enactment of existing laws so far as the language is the same and not inconsistent with the application of it to such a corporation, it is regarded as applying to it.   So far as section 6 of the Business Corporations Law is concerned, it is in substance and almost in identical language the same as section 19 of the act of 1848.   It is also the same in substance as section 38 of the Laws of 1875.   But it cannot be said to be taken from one act any more than the other. Nor is there anything in the enactments themselves which throws light upon this question.   Each enactment repeals and re-enacts, in somewhat different form, provisions of the law of 1848 and of 1875, as both acts are mentioned and parts repealed in the schedules attached to each enactment.

But we are not left in doubt as to the proper construction of this clause of section 6 of the Business Corporations Law, or of its scope. It is said in *Marstaller* v. *Mills* (*supra*) that it was taken from the act of 1875, as we have seen.   It is equally accurate to say that it was taken from section 19 of the act of 1848.   But it is clear that in application it is to receive force so far as applicable to either class of corporations, whether those existing by virtue of the provisions of the act of 1875 or prior enactments.   Judge GRAY says: " Although it was inserted in connection with a provision made for the event of a failure to pay in the capital stock, its language is too comprehensive to warrant us in attributing any other legislative intent than what the plain reading conveys.   Inartificial as may be the insertion of

this clause in the section, it cannot be qualified by what precedes, and it reaches beyond the contingency of the particular dissolution previously referred to and applies to any; that is to every, case of corporate dissolution." This language, taken in connection with the rule of construction embraced in each one of the several enactments revising these laws, seems to admit of no other conclusion than that this section was intended to and does apply to all business corporations existing prior to the revision. This view is also reinforced by the provisions of section 32 of the Statutory Construction Law (Laws of 1892, chap. 677, as amd. by Laws of 1894, chap. 448), which provides: "The provisions of a law repealing a prior law, which are substantial re-enactments of provisions of the prior law, shall be construed as a continuation of such provisions of such prior law, and not as new enactments." And this construction has been applied to uphold an existing obligation created by a prior law, even though the new enactment did not continue the provision in force as to new acts. (*Matter of Prime*, 136 N. Y. 347.)

It is perfectly evident by the carefully drawn rules of construction that it was the policy of the Legislature in making the revision to save every right and liability possessed by every corporation which existed in this State according to law, no matter under what act created. By section 24 of the General Corporation Law of 1890, the most comprehensive language is used to save every right and liability which existed prior to the act's taking effect. And if it had been subsequently held, as seems to be the doctrine of the *Hepworth Case* (*supra*), that the provisions of the Revised Statutes embrace such claims as are presented in this action, within the term "creditors," the provisions of sections 19 and 20 of the General Corporation Law would have clearly saved this liability. The *Yuengling* case, however, discredits this view, but inasmuch as the evident intent was to continue the obligation, we may lay hold of any of these enactments which continue the provisions of the prior law, no matter where they are found, unless clearly inconsistent; and by the express declaration of the Court of Appeals, section 6 of the Business Corporations Law may thus be laid hold of and made applicable to this corporation. The intent existing to continue the obligations, the rules of law for the construction of statutes authorize such a result. (*People ex rel. Twenty-third St. R. R. Co.* v. *Comrs.*

*of Taxes,* 95 N. Y. 554, 558; Endlich Interp. Stat. § 203; Black Interp. Laws, 359, § 133.)

These laws were again revised and amended by the Laws of 1892, chapters 687, 688 and 691. These laws again repealed the whole of the act of 1848, chapter 40, and all of chapter 611 of the Laws of 1875, and also the provisions of the Revised Statutes referred to in section 26 of the act of 1848. No change, however, was made in the provisions which we have considered. The Legislature was again careful to re-enact in section 35 of the General Corporation Law the saving clause contained in the act of 1890, while in section 36, immediately following the saving clause, is a much broader construction clause than existed in the prior act. It reads:

" § 36. **Construction.**— The provisions of this chapter, and of the Stock Corporation Law, the Railroad Law, the Transportation Corporations Law, and the Business Corporations Law, so far as they are substantially the same as those of laws existing on April 30, 1891, shall be construed as a continuation of such laws modified or amended according to the language employed in this chapter, or in the Stock Corporation Law, the Railroad Law, the Transportation Corporations Law, or the Business Corporations Law, and not as new enactments."

And in a subsequent provision of this section the Legislature is again careful, in the most comprehensive language, to save every right and obligation existing in favor of or against any corporation created by special laws prior to the passage of the act of 1890.

As I view this case, therefore, it does not seem possible to give full force and effect to the legislative provisions and the evident intent of the Legislature, and hold that this obligation against this corporation did not survive the termination of its charter. There are some expressions in the *Yuengling* case which are not easily harmonized with this view. But the provisions of section 19 of chapter 40 of the Laws of 1848 seem to have been entirely overlooked. They are not adverted to in either opinion delivered in that case. As it was in fact repealed and in fact re-enacted by the act of 1890, and continued in the act of 1892, and as this corporation was then confessedly in existence and made subject to these laws, and as the Court of Appeals has declared that such re-enacted provision " applies to any, that is to every, case of corporate dissolution," it

must of necessity, if force is to be given to language, be held that such provision is applicable to this corporation.

It follows, if these views are correct, that this order was proper, and it should, therefore, be affirmed, with ten dollars costs and disbursements.

O'BRIEN, J., concurred.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.