PEOPLE v. BELLANDO et al.

(Supreme Court, Appellate Division, First Department. April 15, 1910.)

1. BAIL (§ 93*)—CRIMINAL PROSECUTIONS—DEFAULT—DEFAULT AFTER SURETY'S DEATH.

　　Code Cr. Proc. § 593, requires the court to enter upon its minutes defendant's neglect to appear for trial, whereupon his undertaking for bail is forfeited. Section 595 authorizes the district attorney, if the forfeiture be not discharged, to proceed against any surety at any time after adjourn-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ment, and section 590 permits a surety to surrender defendant at any time before forfeiture of the undertaking, so as to relieve himself from liability. Consolidation Act (Laws 1882, c. 410), § 1480, requires forfeited recognizances to be filed in the office of the clerk and docketed like the transcript of a judgment for a penalty, and provides that it shall thereafter be a lien on the realty of the sureties. *Held,* that construing section 1480 with the other sections, and in view of Code Civ. Proc. §§ 763, 765, 1210, 1275, which contemplated entry of judgment after a defendant's death only in cases where a decision or verdict, etc., was rendered during his life it only related to the entry of judgment against sureties on a bail bond, who were living when the judgment was entered, so that a judgment entered on a default committed after the surety's death was at least voidable and should be vacated upon motion of the surety's personal representative.

[Ed. Note.—For other cases, see Bail, Dec. Dig. § 93.*]

2. PRINCIPAL AND AGENT (§ 43*)—REVOCATION OF AUTHORITY—DEATH.

The authority granted by a power of attorney ordinarily terminates upon the death of the person executing the power.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 67–71; Dec. Dig. § 43.*]

Clarke and Scott, JJ., dissenting.

Appeal from Special Term, New York County.

Action by the People of the State of New York against Alesandro Bellando, impleaded with others. From an order denying a motion to vacate a judgment entered upon a bail bond, Felix Bellando, as executor, appeals. Reversed, and motion granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Arthur E. Kaulfuss, for appellant.

Robert C. Taylor, for the People.

Theodore Connoly and Clarence L. Barber, for respondent, City of New York.

INGRAHAM, P. J. One Michele Reller was arrested and taken before a city magistrate upon a charge of assault. He was admitted to bail in the sum of $500 and furnished a bail bond to appear and answer the charge in whatever court it might be prosecuted and to render himself amenable to the orders and process of the court. This bond was executed by Reller as principal and Bellando as surety. It appeared that Reller was subsequently indicted and appeared and pleaded not guilty to the indictment, and his case was called for trial on the 21st of March, 1907. He appeared on that day, but the trial was postponed. On the 17th of August 1907, Bellando, the surety, died. Subsequent thereto, and on November 12, 1907, Reller was called for trial on such indictment, but failed to appear, and on that day the undertaking was, by order of the Court of General Sessions, forfeited; whereupon, on the 15th day of November, 1907, the bond was filed in the office of the clerk of the county of New York, with a copy of the order forfeiting the bail, and judgment thereon was entered against the said Reller and Bellando, although Bellando had died on the 17th of August prior thereto. Execution was subsequently issued to the sheriff of the county of New York, and Bellando's executor

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

then moved to vacate that judgment and also the execution issued up-
on said judgment. That motion was denied, and the executor appeals.

Section 593 of the Code of Criminal Procedure provides that:

"If, without sufficient excuse, the defendant neglect to appear for arraign-
ment, or for trial, * * * the court must direct the fact to be entered
upon its minutes; and the undertaking of his bail, or the money deposited,
instead of bail, as the case may be, is thereupon forfeited."

Section 595 of the said Code provides:

"If the forfeiture be not discharged, as provided in the last section, the
district attorney, may, at any time after the adjournment of the court, pro-
ceed against any surety upon his undertaking. Such proceeding shall be
by action only, except in the city and county of New York, where it shall be
in the method now prescribed by special statute."

Section 1480 of the consolidation act (chapter 410 of the Laws of
1882) provides that:

"All recognizances given to answer to a charge preferred, or for good
behavior, or to appear and testify in all cases cognizable before any court
of criminal jurisdiction, on being forfeited, shall be filed by the district at-
torney, together with a certified copy of the order of the court forfeiting
the same, in the office of the clerk of the said city and county, and thereupon
the said clerk shall docket the same in the book kept by him for docketing
of judgments, transcripts whereof are filed with him as such clerk, as if
the same was the transcript of a judgment record for the amount of the
penalty, and the recognizance, and the certified copy of the order forfeiting
the recognizance, shall be the judgment record."

It was under these provisions that the bail bond was declared for-
feited and the judgment entered thereon against the surety who, at
the time of forfeiting the bail, was dead. At any time before the un-
dertaking it declared forfeited, the surety may surrender the defend-
ant in his exoneration (section 590 of the Code of Criminal Proce-
dure), and he thereby is relieved from liability. It appears that dur-
ing the lifetime of the surety he saw to it that the principal responded
to all orders of the court in relation to his trial. Neither the prin-
cipal nor the surety was in default during the lifetime of the surety,
and the surety was not liable during his life, as the principal met, so
far as appears, all orders of the court and appeared whenever re-
quired during the life of the surety. The obligation of the surety was
that the principal should appear and answer the charge of assault in
whatever court it may be prosecuted and should at all times render
himself amenable to the orders and process of the court, and, if con-
victed, shall appear for judgment, and render himself in execution
thereof, or, if he failed to perform either of these conditions, he would
pay to the people of the state of New York the sum of $500.

Upon this appeal it is not necessary to determine what effect, if any,
the death of the surety, before the failure of the principal to comply
with any order of the court, had upon his liability. The only question
presented is whether the judgment could be entered upon such an un-
dertaking after the death of one of the parties against the deceased.
There is no express provision of the statute to which our attention
has been called which provides for such a case. Section 1480 of the
consolidation act provides that recognizances, on being forfeited, shall

be filed by the district attorney, together with a certified copy of the order of the court forfeiting the same in the office of the clerk of the said city and county; and thereupon the said clerk shall docket the same in the book kept by him for docketing of judgments, transcripts whereof are filed with him as such clerk, as if the same was the transcript of a judgment record for the amount of the penalty; that such judgment shall, in good faith, be a lien on the real estate of the persons entering into such recognizance from the time of filing said recognizance and copy, or for docketing the same. The language here used clearly recognizes the existence of the persons liable upon the recognizance and makes the judgment a lien upon their property. A person who has ceased to exist has no property and necesessarily can be subject to no process. Upon the decease of an individual he is necessarily divested of whatever property he had during his life. It then vests absolutely in either his devisees, heirs at law, or his personal representatives; and by the death of a person who has executed a power of attorney or agreement the authority granted by the power of attorney terminates by the death.

The rule at common law is discussed in Nichols v. Chapman, 9 Wend. 452. The defendant in that case executed a bond and warrant of attorney, authorizing a confession of judgment in the penal sum of $10,000; the condition of the bond being for the payment of $5,000. On the 10th of August the defendant died. On the 20th of August letters of administration were granted on his estate. On the 11th of October judgment was entered upon the warrant as of July term preceding, the death of the defendant being suggested on the record, and on the 15th of October an execution, tested as of July term and returnable at the October term, was delivered to the sheriff and levied on the property of the deceased. It was stated by Savage, C. J., that the general rule was that the death of either party to a warrant of attorney is a revocation of it; but this rule does not apply where a judgment entered upon such warrant can be made good by relation; that, if a person who has executed a bond and warrant of attorney to confess judgment died during the vacation, judgment may be entered against him during the whole vacation, as of the preceding term, and it would be valid by the common law. Heapy v. Parris, 6 T. R. 368, was alluded to, where the judgment was entered in vacation on which an execution was issued, tested after the defendant's death. On motion to set aside this judgment and execution, the judgment was held to be regular, but the execution set aside; the court saying:

"For the practice is well established of entering judgment of course, without special motion, during the term or vacation in which the defendant has died, at any time when the judgment can have relation to a period before the death of the defendant. But a judgment cannot regularly relate back more than one term. If entered in term, it relates to the first day of the term, so, also, if entered at any time during the vacation; but a judgment entered in May term or vacation cannot relate to the January term previous."

The court cites Bennett v. Davis, 3 Cow. 68. In that case the judgment was on a bond and warrant of an attorney and was filed on the 6th of May after the commencement of the May term. One of the

defendants died on the 14th of April, when a motion was made to set aside the judgment upon the ground that, being entered in the May term, it could not relate to the previous term, and upon that ground the proceedings were held to be irregular. There was no authority for entering a judgment upon a forfeited recognizance as of the period prior to the forfeiting of the recognizance. In fact, no liability existed until the recognizance was forfeited, and, upon the undisputed facts in this case, no liability actually existed during the lifetime of the surety.

There are various provisions in the Code of Civil Procedure authorizing a judgment to be entered after the death of a defendant, but they are limited to cases in which a decision or verdict or report has. been rendered during his life. Thus, section 763 of the Code of Civil Procedure provides that:

"If either party to an action dies, after an accepted offer to allow judgment to be taken, or after a verdict, report or decision or an interlocutory judgment but before final judgment is entered, the court must enter final judgment in the name of the original parties, unless the offer, verdict, report or decision, or the interlocutory judgment, is set aside."

Section 765 provides that:

"This title does not authorize the entry of a judgment against the party who dies before a verdict, report or decision is actually rendered against him. In that case, the verdict, report or decision is absolutely void."

Section 1210 of the Code provides that:

"Where a judgment for a sum of money, or directing the payment of money, is entered against a party after his death, in a case where it may be so taken, by special provision of law, a memorandum of the party's death must be entered, with the judgment, in the judgment book, endorsed on the judgment roll, and noted on the margin of the docket of the judgment. Such a judgment does not become a lien upon the real property, or chattels real, of the decedent; but it establishes a debt, to be paid in the course of administration."

Section 1275 provides that a judgment by confession shall not be entered upon such a statement after the defendant's death.

The provision of section 1480 of the consolidation act, while authorizing the entry of a judgment against the sureties upon a bail bond, can have relation only to living persons. There could be no judgment against a debtor at common law entered after his death, except for the fiction that was preserved that all judgments entered during the term or vacation were tested as of the first day of the term, so that the judgment was conclusively presumed to have been entered upon the first day of the term which preceded the decedent's death. In the Enc. of Pleading & Pr. vol. 11, p. 443, it is stated that a judgment rendered for or against a party after his death is either utterly void and may be collaterally attacked, or erroneous and voidable when properly assailed in a direct proceeding for that purpose; and from the cases cited in the note it seems that the only question is whether such a judgment is absolutely void or erroneous and voidable. It has been recognized as a general principle that the personal representatives of a judgment debtor have a right to contest the liability of the claim.

Such a right certainly is necessary in this case, as the question whether or not there is any liability where the default first happened after the death of the bail so that no liability existed at the time of his death is one not entirely free from doubt.

I think, therefore, that this judgment was at least voidable, having been entered upon a liability which did not accrue until after the death of the surety, and for that reason the court below should have vacated the judgment, leaving the people to proceed against the personal representatives of the deceased surety; as they should be advised, and the order appealed from should therefore be reversed, with $10 costs and disbursements, and motion granted.

McLAUGHLIN and DOWLING, JJ., concur.

SCOTT, J. I dissent. It seems to be well settled that the obligation of a surety on a bail bond survives and binds his estate after death (Cyc. vol. 5, p. 126; U. S. v. Keiver [C. C.] 56 Fed. 422), for as was said in the case last cited:

"Such obligations would be of little force and service if they did not survive the death of the surety. It is a continuing obligation and binds the estate of the obligor upon his death."

The serious question in the case is whether judgment upon a forfeited recognizance may be entered and docketed against a surety after his death. There is no express statutory provision either way. All that the statute provides is that upon forfeiture the recognizance, with a certified copy of the order forfeiting the same, "shall be filed by the district attorney" in the office of the clerk of the county, who shall thereupon "docket the same in the book kept by him for the docketing of judgments." Laws 1882, c. 410, § 1480. The duties imposed upon the district attorney and the county clerk are mandatory, and the statute leaves them no option, even if they could be presumed in each case (as they cannot) to know whether the surety is alive or dead. The legality of this method of entering judgment is no longer open to question. People v. Quigg, 59 N. Y. 83; People v. Cowan, 146 N. Y. 348, 41 N. E. 26. The moment the principal makes default and his nonappearance is entered in the minutes, the recognizance becomes ipso facto forfeited. No further or formal order is necessary to fix the liability of the surety. His obligation to pay the amount of the bail then accrues and becomes absolute upon the record. People v. Bennett, 136 N. Y. 482, 32 N. E. 1044. The entry of judgment in the name of a dead man is not necessarily irregular or void. Under certain circumstances it might be done under the common-law practice, and may be done under our present Code practice. Under the old practice, it could be done by entering the judgment as of the beginning of the term during which the death occurred. Nichols v. Chapman, 9 Wend. 452. Section 763, Code Civ. Proc., provides that:

"If either party to an action dies after an accepted offer to allow judgment to be taken, or after a verdict, report or decision or an interlocutory judgment, but before final judgment is entered, the court must enter final judgment in the name of the original parties unless the offer, verdict, report or decision or the interlocutory judgment is set aside."

Section 765 provides:

"This title does not authorize the entry of a judgment against the party who dies before a verdict, report or decision is actually rendered against him. In that case the verdict, report or decision is absolutely void."

The distinction between the two classes of cases thus provided for is very obvious. If the debtor's liability is definitely fixed, so that there is nothing left to litigate, the judgment, which is merely the formal record of the indebtedness, may be entered, notwithstanding the debtor has died. It then becomes conclusive evidence of the debt owing by his estate. If, however, there is something left which may be open to further litigation which the debtor cannot carry on, judgment cannot be entered against him, and the claim against his estate must be otherwise established. By analogy it would seem, in the absence of any statute forbidding it, that a judgment upon a forfeited recognizance may be issued after the death of a surety, for there is nothing which he could, if alive, have litigated. The amount of his obligation is fixed by the bail bond, and his liability thereon is fixed by the failure of his principal to appear, a fact of which he is not entitled to notice, and which he cannot contest, except perhaps on a motion to vacate the judgment. The learned counsel for the appellant cites us to a number of cases as authority for the general proposition that judgment cannot be entered against a dead man. They all fall within the class of cases provided for by section 765 of the Code, and are not decisive of the present motion. I am therefore of the opinion that the judgment was properly entered in pursuance of the mandatory provisions of the act of 1882 quoted above, and that it cannot be attacked by the executor of the surety, except upon some ground that would have justified an attack upon it by the surety if alive. What the effect of such a judgment is it is not necessary now to inquire. It probably does not become a lien upon the real property or chattels real of the decedent, but establishes a debt to be paid in the course of administration. Section 1210, Code Civ. Proc.

In my opinion, the order appealed from is right and should be affirmed, with $10 costs and disbursements.

CLARKE, J., concurs.